UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KATHERINE PRIESTLEY,                       :
                                           :
                **Plaintiff,**                :
                                           :
      against-                       :    07 CV 1361 (HB)
                                           :    <u>OPINION &</u>
                                           :    <u>ORDER</u>
MCDONALD COMRIE; PHILLIP YEE;              :
DR. DAVID ERLANGER; PANMEDIX, INC.;        :
ELECTRONIC KNOWLEDGE PUBLISHING, INC.;     :
and HEADMINDER, INC.                       :
                                           :
                **Defendants.**              :
----------------------------------------------------------------x
**Hon. HAROLD BAER, JR., District Judge[1]:**

       Plaintiff Katherine Priestley brings this action individually, and derivatively on behalf of and for Defendant PanMedix, against Defendants McDonald Comrie, Chief Executive Officer and President of PanMedix, Inc. and President of Electronic Knowledge Publishing, Inc.; Phillip Yee, Director and technology officer of Defendant PanMedix; Dr. David Erlanger, Chief Scientific Officer of Defendant PanMedix; PanMedix, Inc, a Delaware company with its main offices in New York; Electronic Knowledge Publishing, Inc., a Delaware company with its main offices in New York; and Headminder, Inc., a New York company that maintains its offices in New York. Plaintiff seeks individually to obtain repayment, plus interest, of two loans made to Defendant PanMedix that are now overdue. Additionally, Plaintiff seeks to recover derivatively for breaches of fiduciary duties of loyalty and due care by Defendants Comrie, Yee, and Erlanger.

       Defendants move to dismiss Plaintiff's claims pursuant to Fed R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 41(a). Defendants contend that Plaintiff's individual claims to recover on the promissory note should be dismissed under the "two dismissal rule" of Fed. R. Civ. P. 41(a) and that the derivative claims should be dismissed because Plaintiff is unfit to adequately and fairly represent PanMedix shareholders in a derivative action.

---

[1] Ashley Antler, a Summer 2007 intern in my Chambers and a law student at Cardozo School of Law, and Devin Taylor, a Fall 2007 intern and a law student at Brooklyn Lay School, provided substantial assistance with the research of drafting of this Opinion.

1

## I. Background

Plaintiff Katherine Priestley ("Priestley") is the holder of a Senior Promissory Note issued by Defendant PanMedix ("PanMedix"), and is owner of 18.85% of PanMedix's common stock. Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") 5. PanMedix is a start-up company in the business of developing technology for healthcare industries, pharmaceutical companies, and research and academic institutions. Mem. of Law in Supp. of Def.'s Mot. to Dismiss 2-3. Defendant McDonald Comrie ("Comrie") is the Chief Executive Officer and President of PanMedix Inc., and President of Defendant Electronic Knowledge Publishing, Inc ("EKP"). Compl. ¶ 4. Defendant Phillip Yee ("Yee") is Director and Technology Officer of PanMedix. Id. ¶ 5. Defendant Dr. David Erlanger ("Erlanger") is the Chief Scientific Officer of PanMedix. Id. ¶ 6.

In 1997, Plaintiff became a shareholder in PanMedix's predecessor company, Xcape, Inc.,[2] which in 2000 was restructured into PanMedix and a wholly-owned subsidiary, EKP. Pl's Opp'n 5.

In March 2001, PanMedix needed operating capital, and Comrie asked Plaintiff to provide financing to PanMedix. Decl. of Pl. in Opp'n to Def.'s Mot. to Dismiss ("Priestley Decl.") ¶ 7. At that time, Comrie also asked Plaintiff to be a member of the Board of Directors of PanMedix; subsequently, on March 15, 2001, a Consent of Shareholders was executed and Plaintiff became one of the Directors of PanMedix. Id. ¶ 8.

In April 2001, Plaintiff loaned PanMedix $750,000.00, subject to the terms of a one-year Senior Secured Promissory Note issued by PanMedix.[3] Pl.'s Opp'n 5. Comrie signed the Senior Secured Promissory Note in his capacity as PanMedix's President, and also signed an Unconditional Agreement of Guarantor in his capacity as EKP's President. Compl. ¶ 25.

In August 2001, Plaintiff acquired 20,777 shares of PanMedix common stock for $100.00, and consequently became owner of 18.85% of PanMedix shares. Priestley Decl. ¶ 12.

---

[2] Decl. of Katherine Priestley in Opp'n to Def.'s Mot. to Dismiss ("Priestly Decl.") ¶ 3.
[3] The Senior Secured Promissory Note, dated April 6, 2001, "evidenced a debt of $750,000.00 in principal, with interest at 11.5% for the one-year term of the 'Senior Secured Promissory Note,' and at 13% per annum from April 6, 2002 thereafter until the principal was paid." Id. ¶ 10. Under the terms of the Senior Secured Promissory Note, Plaintiff had an express right as "Holder" to demand in writing the entire unpaid principal of the Note, as well as unpaid interest due and owing, if Defendant committed any of several listed "events of default," including failure to pay principal or interest during default. Id ¶ 11.

2

In March 2002, Comrie met with Plaintiff and informed her that PanMedix was able to make interest payments for the previous year, but could not repay the principal. Id. Thus, on April 6, 2002, when the $750,000 principal of the Senior Secured Promissory Note was due to be repaid, PanMedix was unable to repay Plaintiff. Id. ¶ 13. Furthermore, Plaintiff was told that if she called the Note due, PanMedix would become bankrupt and cease operations, and that as a result the value of the collateral would not be close to the value of the loan. Id. Plaintiff then agreed to loan PanMedix an additional $85,000, subject to the terms of the Senior Secured Promissory Note,[4] upon President Comrie's representation that this loan would give management time to seek funding and recapitalize the business. Id. ¶ 14-15.

The new loan notwithstanding, by 2003, PanMedix continued to suffer from undercapitalization and insufficient revenue generation from product sales. Pl.'s Opp'n 5. On June 23, 2003, Plaintiff sent the first of three Notices of Default[5] to PanMedix. Priestley Decl. ¶ 23. In May and September 2003, Plaintiff Priestley discussed several potential opportunities and strategies for raising venture capital with PanMedix management, both orally and in writing. Id. ¶¶ 18-19, 25. By 2005, though, PanMedix business had not improved, and capital had not been raised. Pl.'s Opp'n 5.

In the summer of 2005, Defendants Comrie, Yee, and Erlanger took steps to acquire the assets of another financially troubled biotech company, Sention, Inc. Pl.'s Opp'n 5. Plaintiff asserts that Defendants attempted to acquire Sention's assets in a separate company, to their own personal benefit but to the detriment of PanMedix. Pl.'s Opp'n. 5-6.[6]

As of December 7, 2005, PanMedix's balance sheet showed retained earnings of around negative $2.8 million, and total equity of around negative $1.16 million. Priestley Decl. ¶ 42. Around the same time, Plaintiff sent two additional Notices: a Notice of Default on November 20, 2005, and a Notice of Court Action, advising Comrie and PanMedix of the default, on February 23, 2006. Id. ¶¶ 38, 50

---

[4] The interest on the second loan would be paid quarterly and on time, at the new rate of 13%. Id. ¶ 15.
[5] Plaintiff, as Holder of the Senior Secured Promissory Note, declared due and payable the entire principal amount of the Note, as well as all accrued interest. Id. ¶ 23.
[6] Defendants offer a conflicting account of the Sention deal. Defendants contend that Comrie advised Plaintiff of the Sention deal, and that Plaintiff attempted to sabotage the deal for fear that if the deal was satisfied, she would be relegated to a minority shareholder and not a creditor, rendering her unable to dictate provisions to the company. Defendants contend that Plaintiff arranged meetings to discourage creditors from loaning PanMedix money, effectively sabotaging the deal. Mem. of Law in Supp. of Def.'s Mot. to Dismiss 7-8.

## II. Procedural History

### *State Action 1*

On March 9, 2006, Plaintiff filed an action in New York State Supreme Court[7] seeking payment on the Senior Secured Promissory Note in the amount of $750,000.00 of principal, $381,750.00 in unpaid interest up to March 8, 2006, and costs and attorneys' fees. Decl. of Philip Byler, in Opp'n to Def.'s Mot. to Dismiss ("Byler Decl.") Ex. B. Before the Summons was served, Plaintiff informed Defendant Comrie that she had commenced a lawsuit. Priestley Decl. ¶ 53. Comrie suggested to Plaintiff that such a lawsuit would jeopardize the company's efforts to seek business and attract financing, and reassured Plaintiff that if she did not proceed with the lawsuit they would promptly address her concerns about the management and financing of the company. Id. Plaintiff agreed to discontinue the litigation upon the representation that the parties would enter into good faith negotiations. Id. On April 13, 2006, Plaintiff voluntarily dismissed her case by filing a Notice of Voluntary Discontinuance with the court. Byler Decl. Ex. C.

### *State Action 2*

After settlement discussions failed, Plaintiff promptly filed a second action[8] in New York State Supreme Court on April 20, 2006, seeking payment on the Promissory Note. Byler Decl. ¶ 3 Ex. E. However, when PanMedix threatened to assert several counterclaims against Plaintiff,[9] the parties signed a Stipulation of Voluntary Discontinuance on November 27, 2006. Byler Decl. Ex. J.

---

[7] Plaintiff commenced an action by filing both a Summons and Motion for Summary Judgment in Lieu of Complaint, the filing pursuant to CPLR 3213 provides expedited treatment of Promissory Note actions. See Mem. Of Law in Supp. of Def.'s Mot to Dismiss 8, n.7; See also CPLR 3213.

[8] As with the first state action, Plaintiff brought suit by service of a Summons and Motion for Summary Judgment in Lieu of Complaint pursuant to New York CPLR 3213.

[9] Counterclaims included: tortious interference with contract; tortious interference with prospective advantage; breach of duty of loyalty; breach of fiduciary duty; breach of covenant of good faith and fair dealing; and lender liability. Byler Decl. Ex. I at 2.

*Federal Action*

Plaintiff filed the instant diversity suit[10] in federal court on February 16, 2007. In her complaint, Plaintiff asserts four causes of action against Defendants. In the first two causes of action, Plaintiff seeks to recover in her individual capacity, and alleges that PanMedix breached the Senior Secured Promissory Note by, *inter alia*, failing to repay principal amounts loaned by Plaintiff (as well as accrued interest), and failing to provide regular financial disclosures to Plaintiff regarding the financial condition of the company and actual and prospective deals. Compl. ¶ 92. In these first two causes of action, Plaintiff seeks the principal amounts she loaned ($750,000.00 and $85,000.00, respectively), as well as accrued interest on both principal amounts at the rates set forth in the Note. Id. ¶¶ 93, 97. In sum, Plaintiff seeks $1,131,750.00 in relief on the first cause of action, and $125,800.00 on the second cause of action. Compl. 29.

The two remaining claims seek relief derivatively on behalf of and for PanMedix, for damages proximately caused by Defendants Comrie's, Yee's, and Erlanger's breach of fiduciary duty of loyalty[11] to PanMedix. Id. ¶ 102. On this cause of action, Plaintiff seeks $10,000,000.00. Id. at 29. Finally, Plaintiff seeks relief, derivatively, on behalf of and for PanMedix, for damages proximately caused by Defendants Comrie's, Yee's, and Erlanger's breach of fiduciary duty of care[12] to PanMedix. Id. ¶ 107. On this cause of action, Plaintiff seeks $15,000,000. Id. at 29.[13]

---

[10] Plaintiff is a citizen and resident of the United Kingdom. Compl. ¶ 3. Defendant PanMedix is a company that is incorporated under the laws of Delaware, and that maintains its main offices in New York. Id. ¶ 7. Likewise, Defendant EKP is a company that is incorporated under the laws of Delaware and that maintains its main offices in New York. Id. ¶ 8. Defendants being sued in their individual capacities—McComrie, Yee, and Erlanger—are all residents of New York. Id. ¶¶ 4-6.

[11] Plaintiff contends that Defendants Comrie, Yee, and Erlanger breached their fiduciary duty of loyalty to PanMedix by structuring a license agreement with a new company in order to attain the Sention assets in 2005, to the detriment of the company but to the personal profit of the individual Defendants. Compl. ¶ 100.

[12] Plaintiff asserts that Defendants Comrie, Yee, and Erlanger breached their fiduciary duty of care to PanMedix by, *inter alia*: (i) prolonged failure to raise capital to operate the PanMedix business; (ii) failure to develop and market products; (iii) failure to have operating budgets; (iv) failure in allowing business assets to waste; (v) failure to hire and employ experienced and qualified personnel to develop the business; (vi) failure to take proper actions when PanMedix was insolvent; (vi) failure to make proper reports to shareholders and senior debtholders; (viii) failure to avoid legal liabilities. Compl. ¶ 105.

[13] No demand on the PanMedix board was required in this case with respect to the breaches of fiduciary duty because it would be futile, given Defendant Comrie, Yee, and Erlanger's domination and control of the board of directors of PanMedix. Compl. ¶¶ 101, 106. *Kaster v. Modification Systems, Inc.*, 731 F.2d 1014, 1020 (2d Cir. 1984).

**III. Standard of Review**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to prevail the moving party must establish that the plaintiff has failed to "state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion, the Court must construe all factual allegations in the complaint in favor of the non-moving party. See Krimstock v. Kelly, 306 F.3d 40, 47-48 (2d Cir. 2002). A motion to dismiss should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004), quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).

**IV. Discussion**

   **A. Dismissal Under the Two Dismissal Rule**

The "two dismissal rule," articulated in Rule 41(a)(1) of the Federal Rules of Civil Procedure, provides:

> [A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, *except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim*. Fed. R. Civ. Pr. 41(a)(1) (emphasis added).

However, the "two dismissal rule" does not apply where one of the two previous dismissals is by stipulation. See Poloron Products, Inc., v. Lybrand Ross Bros. & Montgomery, 534 F. 2d 1012, 1017-18. (2d Cir.1976); Allianz CP Gen. Ins. Co. v. Blue Anchor Line, 2004 U.S. Dist. LEXIS 8175, at *7 (S.D.N.Y., May 7, 2004).

In Poloron, the court explained the rationale behind the "two dismissal rule" as a way to prevent "unreasonable use of Plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading," concluding that where the parties mutually agree to a dismissal by stipulation, the potential for plaintiff's abuse of the right to unilateral dismissals is

6

diminished and the rule would not apply. 534 F.2d at 1017. The Poloron court warned against applying the "two dismissal rule" too broadly where it would result in "clos[ing] the courthouse doors to an otherwise proper litigant." See Id. (noting that the "two dismissal rule" is "an exception to the general principle embodied in 41(a)(1) and honored in equity prior to the adoption of the Federal Rules, that a voluntary dismissal of an action does not bar a new suit based upon the same claim.").

The "two dismissal rule" does not bar Plaintiff Priestley's current action in Federal court, even though Plaintiff's previous state actions and current federal action include the same claims for enforcement of the Senior Secured Promissory Note. The "two dismissal rule" does not apply to the current federal action because State Action 2 was dismissed by stipulation. See Poloron, 534 at 1017-1018. (2d Cir.1976); Allianz, 2004 U.S. Dist. LEXIS 8175, at *7. Furthermore, applying the "two dismissal rule" here would contravene the intended narrow scope of the rule, as articulated in Poloron. 534 F.2d at 1017.

Plaintiff is correct in arguing that this case is analogous to Allianz, in which Judge Buchwald relied on Poloron and held that the "'two dismissal rule' applies only when the second dismissal is a dismissal by notice under 41(a)(1)(i)." Allianz, 2004 U.S. Dist. LEXIS 8175, at *7. In Allianz, plaintiff insurance company filed three successive complaints against defendants, transporters and distributors, for damages caused to the insured's power turbine motor in an accident. Id. at *4-5. Plaintiff voluntarily dismissed the first suit by notice of discontinuation; the second suit was dismissed pursuant to stipulation by the parties. Id. at *7. Defendants moved to dismiss the third suit under the "two dismissal rule," but the court denied the motion, holding that the two dismissal rule does not apply, and that "the third action will . . . not be barred where the second dismissal was pursuant to a stipulation under R. 41(a)(1)(ii)." Id., at *7.

It is noteworthy that in Allianz, Judge Buchwald rejected Defendant's argument that Poloron should not apply because in that case the first dismissal was by stipulation, whereas in Allianz, the second dismissal was by stipulation. The court found that "the reasoning of Poloron is that the risk of abuse is reduced where one of the two dismissals is pursuant to a stipulation." Id., at *8, n.2. The same reasoning is applicable here.

**B. Plaintiff's Derivative Claims**

In order to maintain a derivative suit, Delaware law[14] requires a plaintiff to be a stockholder of the corporation at the time of the transaction of which []he complains. Blasband v. Rales, 971 F.2d 1034, 1040 (3d Cir. 1992); Youngman v. Tahmoush, 457 A.2d 376, 379 (Del. Ch. 1983). Additionally, Delaware law implicitly requires a plaintiff bringing a derivative action to be "qualified to serve in a fiduciary capacity as a representative of a class, whose interest is dependant upon the plaintiff's adequate and fair prosecution." Youngman, 457 A. 2d at 379 (citation omitted). To determine whether a plaintiff meets this adequacy of representation requirement, "a Court . . . should examine any extrinsic factors, that is, outside entanglements, which make it likely that the interests of the other stockholders will be disregarded in the prosecution of the suit". Id. Factors that the Court should consider in determining the adequacy and fairness of a plaintiff in a derivative action include:

> [E]conomic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent. Id. at 379-308 (citing Katz v. Plant Industries, Inc., C.A. No. 6407 (Del. Ch. 1981)); See also Vanderbilt v. Geo-Energy, Ltd., 725 F.2d 204, 207 (3d Cir. 1983).

A court need not find all of these factors to disqualify a Plaintiff from bringing a derivative suit. "[O]ften a strong showing of one factor, which is actually inimical to the class" can serve as grounds for dismissal of a derivative claim. Id. at 380. In order to disqualify a plaintiff from bringing a derivative suit, a defendant bears the burden of showing that "a serious conflict of interest exists by virtue of one factor or a combination of [the abovementioned] factors, and that the plaintiff cannot be expected to act in the interests of others because doing so would harm his other interests." Id. at 380 (citation omitted). The interests must be so "strong, adverse, and obvious that a plaintiff could not be expected to adequately and fairly prosecute a representative action." Id. The fact that a plaintiff has interests that are co-extensive with the

---

[14] Delaware law governs Plaintiff's derivative claims in this case. In a diversity action such as this, the conflict of laws principles of the forum state—here, New York—apply. Galef v. Alexander, 615 F.2d 51, 58 (2d Cir. 1980). New York laws look to the state of incorporation to determine which laws should govern a corporation's internal affairs. Id.

class, but which go beyond the class interest, will not disqualify a representative, nor will potential or remote conflicts of interest. Id.

However, "[c]ourts in [the Second] Circuit have long found that plaintiffs attempting to advance derivative and direct claims in the same action face an impermissible conflict of interest." St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler, No. 06-CV-688, 2006 U.S. Dist. LEXIS 72316, *23 (S.D.N.Y., Oct. 4, 2006) (applying Delaware law in a shareholder derivative action).

In light of these holdings, Plaintiff Priestley is unfit to maintain the derivative action on behalf of and for PanMedix because economic antagonisms between Plaintiff and PanMedix shareholders, other pending litigation between Plaintiff and PanMedix and several of its officers, and the magnitude of Plaintiff's interests compared to her interest in the derivative action all create impermissible conflicts of interest that prevent her from fairly and adequately representing PanMedix shareholders. The presence of these factors is discussed below:

**1. Other Litigation Pending Between Plaintiff and Defendants**

The litigation pending between Plaintiff and Defendants renders her unfit to maintain the derivative claims. Her attempt to advance derivative and direct claims in the same action is an impermissible conflict of interest that disqualifies her from maintaining this action. See St. Clair Shores, 2006 U.S. Dist. LEXIS 72316 at *23; See also, DuPont v. Wyly, 61 F.R.D. 615, 622 (D. Del. 1973) (dismissing plaintiff's motion for class action status because of, *inter alia*, plaintiff's direct and conflicting interests with defendant where plaintiff had brought two prior lawsuits against defendant, and was the potential beneficiary of a large sum of money from defendant in one of the pending cases).

**2. Economic Antagonisms Between Plaintiff and PanMedix**

The economic antagonisms between Plaintiff and PanMedix shareholders also render her unfit to advance the derivative claims. Plaintiff is a member of two groups with distinct and conflicting relevant interests, in that her economic interest in recovering on the loans she made personally to Defendant outweighs her interests in recovering derivatively, on behalf of the company. DuPont, 61 F.R.D. at 623. Thus, if Plaintiff succeeds in recovering on her individual claims, the shareholders may be unable to recover on the derivative action. Id. Given this potential antagonism, Plaintiff has an impermissible conflict of interest.

### 3. Relative Magnitude of Plaintiff's Personal Interests Compared to Her Interests in the Derivative Action

The relative magnitude of Plaintiff's individual interests outweighs her interest in the derivative action. Although Plaintiff "shares with the other stockholders the common interests of seeking redress from the defendants for alleged breaches of fiduciary duties," Youngman, 457 A.2d. at 381), Plaintiff's interest in recovering on the Promissory Notes is contrary to the interests of the shareholders in recovering on the derivative action. The fact that Plaintiff has initiated three lawsuits to recover on the promissory note, and only one to recover on the derivative claims, demonstrates that her interest in the direct action outweighs her interest in the derivative action and may thus be antagonistic to the other class members.

## V. CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss is DENIED in part and GRANTED in part. Because one of Plaintiff's two previous state actions to recover on the Promissory Note was dismissed by stipulation of the parties, the current action involving the same claim may not be dismissed under the "two dismissal rule." Defendant's motion pursuant to Rule 41(a)(1) is therefore DENIED. However, Plaintiff Priestly cannot maintain the derivative claims because she has several impermissible conflicts of interest with the shareholder class. Defendant's motion to dismiss Plaintiff's derivative claims is therefore GRANTED. The pre-trial scheduling order remains in full force and effect, and this case remains on my March 2008 trial calendar. The Clerk is instructed to close this motion and remove it from my docket.

SO ORDERED.
November __, 2007
New York, New York

_____
U.S.D.J.

10